**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MAC HIDDEN MEADOWS, LLC,** | § | |
| **TEXAAA PROPERTIES, LLC,** | § | **Civil Action No. 5:21-cv-1062** |
| **MAC OLMOS CLUB, LLC,** | § | |
| **and MACTEX PROPERTIES, LLC,** | § | **Jury** |
| *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **LIFE BEYOND MINDS, LLC and** | § | |
| **PROMINENT CAPITAL** | § | |
| **INVESTMENT, LLC,** | § | |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW, MAC HIDDEN MEADOWS, LLC, TEXAAA PROPERTIES, LLC, MAC OLMOS CLUB, LLC, and MACTEX PROPERTIES, LLC (collectively, "Plaintiffs"), Plaintiffs in the above-styled and numbered cause, and file this Original Complaint, suing LIFE BEYOND MINDS, LLC, and PROMINENT CAPITAL INVESTMENT, LLC, and would show as follows:

### I.    INTRODUCTION

1.    This action seeks to recover earnest money not deposited by Defendants pursuant to the clear language of an executed contract for sale of apartment buildings in San Antonio, Texas, along with attorneys' fees, taxable costs of court, and pre-judgment and post-judgment interest. Plaintiffs demand a jury trial on all issues triable to a jury.

### II.    PARTIES

2.    MAC HIDDEN MEADOWS, LLC, TEXAAA PROPERTIES, LLC, MAC OLMOS CLUB, LLC, and MACTEX PROPERTIES, LLC are all Texas limited liability companies with their principal offices in San Antonio, Texas.

3.      Defendant LIFE BEYOND MINDS, LLC is a Georgia limited liability company. Its principal office is located in Covington, Georgia. It may be served with summons by serving its registered agent, Jeff St. Fleur, at 2988 Covington Highway, Covington, Georgia 30015.

4.      Defendant PROMINENT CAPITAL INVESTMENT, LLC is a Georgia limited liability company. Its principal office is located in Covington, Georgia. It may be served with summons by serving its registered agent, Life Beyond Minds, LLC, at 2988 Covington Highway, Covington, Georgia 30015.

## III.      JURISDICTION AND VENUE

5.      This action is brought pursuant to an executed and receipted contract for the purchase and sale of real property (the "PSA") located in San Antonio, Texas. A true and correct copy of the PSA is attached hereto as Exhibit A. The PSA's mandatory venue selection clause states that the "venue for any legal action arising out of this [PSA] shall solely lie in Bexar County, Texas." See PSA at 14; s*ee also, e.g., Kelvin Services, Inc. v. Lexington State Bank*, 46 F.3d 13 (5th Cir. 1995) (holding that a contract stating "the legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas" is a valid and enforceable choice of forum provision and district court erred in dismissing the case for lack of personal jurisdiction).

6.      Jurisdiction is appropriate in this District Court, as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332(a), (a)(1).

## IV.      FACTS

7.      Plaintiffs each own apartment complexes (collectively the "Properties") in San Antonio, Texas. The Properties are individually referred to as Hidden Meadow Apartments,

Olmos Club Apartments, Summer Place Apartments, and Regency Manor Apartments. The Properties comprise 549 apartment units.

8.      In 2021, Plaintiffs offered the Properties for sale as a package.

      A.      The PSA.

9.      On August 31, 2021, Plaintiffs and Defendants finalized and executed the PSA for the purchase and sale of the Properties, with the parties receipting the PSA with the title company named therein.

10.      The PSA is a legally binding contract.

11.      The PSA's Effective Date (defined in the PSA as the date receipted by the Title Company) is August 31, 2021.

12.      Section 2 of the PSA required that the "Buyer shall deposit $1,000,000.00 into an interest-bearing escrow account held by [the defined Title Company], simultaneously with the delivery of the Buyer-executed version of this Agreement to the Title Company ('the Earnest Money'). Except as otherwise provided herein, the Earnest Money is non-refundable, but is applicable to the Purchase Price at Closing."

13.      All notices under the PSA were to be "in writing and served by postage prepaid certified mail, by next day delivery (such as Federal Express), by facsimile transmission, or by electronic mail to the addresses shown below, until notification of a change of such addresses. All such notices shall be deemed delivered on the date initiated."

14.      All notices under the PSA were to be delivered to the persons or entities delineated therein, at the addresses or email addresses delineated therein.

> B.     <u>The Defendants failed to deposit the Earnest Money as required under the PSA.</u>

15.     Even though the executed PSA was receipted with the title company, Defendants did not deposit the Earnest Money as required by the now legally-binding PSA.

16.     After making multiple informal requests to deposit the Earnest Money as stated in the PSA, on September 7, 2021, Plaintiffs provided Defendants written notice of default under the PSA due to their failure to deposit the Earnest Money.

17.     Section 14 of the PSA states that in the event of default by the Defendants, if the default is not cured within ten days after receipt of written notice from Plaintiffs, Plaintiffs will immediately receive the Earnest Money.

18.     Defendants had until September 17, 2021, to cure the default by depositing the Earnest Money.

19.     Defendants did not cure the default by depositing the Earnest Money.

> C.     <u>The Defendants did not terminate the PSA.</u>

20.     Further, Section 6 of the PSA states that the Defendants shall have fifteen days after the Effective Date in which to do its due diligence on the Properties (the "Inspection Period").

21.     The Inspection Period ran from August 31, 2021 – September 14, 2021.

22.     Section 6 of the PSA states that within that period, if the Defendants determined, in their sole discretion, that the Properties were unsuitable for their use and gave notice to terminate the PSA, then the PSA would terminate and all Earnest Money[1] would be returned to the Defendants.

---

[1] Less $15,000 to the Plaintiffs as independent consideration for Defendants' right to terminate the PSA during the Inspection Period.

23.     Section 6 of the PSA further states that if Defendants did not terminate the PSA during the Inspection Period, then Defendants were "deemed to have accepted the [Properties] in totality as to all conditions, releasing and waiving [Plaintiffs] from any and all claims related to the [Properties]. Furthermore, notwithstanding anything to the contrary contained in this [PSA], upon the expiration of the Inspection Period, $150,000.00 of the Earnest Money will be (i) deemed earned by [Plaintiffs] for any and all purposes herein, (ii) immediately released to [Plaintiffs] by the Title Company, and (iii) non-refundable under any and all circumstances (the 'Released Earnest Money')."

24.     Defendants did not send written notice terminating the PSA to Plaintiffs.

D.     <u>Presentment and Refusal to Pay.</u>

25.     After the ten days to cure the default had expired, and after the expiration of the Inspection Period, on September 22, 2021, Plaintiffs made presentment and demand on Defendants to deliver the Earnest Money to the Title Company.

26.     In response, Defendants' counsel made several erroneous statements, including alleging that Plaintiffs were somehow in default.

27.      However, neither Defendants nor their counsel have ever sent a notice of default to Plaintiffs as required for a valid default under the PSA.

28.     Further, Plaintiffs have not caused any default under the PSA.

29.     Defendants admitted in their letter that they were in default of the PSA.

30.     Defendants stated that they would not be sending any Earnest Money to the Plaintiffs, essentially refusing to pay any portion of the Earnest Money.

### V.     CAUSE OF ACTION: BREACH OF CONTRACT

31.     Paragraphs 1-30 are incorporated by reference as if fully stated herein.

32.     Pursuant to the PSA, if Defendants fail "to perform any of [their] obligations or conditions as required under this [PSA] or otherwise breach[] this [PSA] in any manner whatsoever and fail[] to cure such default ten (10) days after receipt of written notice from [Plaintiffs], then [Plaintiffs] as [their] sole and exclusive remedy, will immediately receive the Earnest Money as liquidated damages, it being agreed between Buyer and Seller that such sum shall be liquidated damages for a default of Buyer hereunder because of the difficulty, inconvenience, and the uncertainty of ascertaining actual damages for such default, and be entitled to pursue recovery of any damages or expenses related to the indemnity provided in Section 6 above."

33.     Defendants failed to deposit Earnest Money in accordance with the PSA.

34.     The failure to deposit the Earnest Money is a breach of the PSA.

35.     Plaintiffs' "sole and exclusive remedy" under the PSA for this or any other breach is that the Plaintiffs receive the Earnest Money ($1,000,000.00).

36.     The Earnest Money represents approximately 2% of the total purchase price of $47,750,000.00.

37.     Section 4 of the PSA also states that $15,000.00 of the Earnest Money was immediately due to Plaintiffs as independent consideration for the right to terminate the PSA.

38.     Accordingly, Plaintiffs are entitled to $1,000,000.00 from Defendants as of September 18, 2021, with interest thereon.

39.     Alternatively, even if the Court were to find that the Plaintiffs were not entitled to the entirety of the Earnest Money, the Plaintiffs are entitled to the independent consideration of $15,000.00.

## VI.   PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court grant them the relief sought herein, including but not limited to the Earnest Money of $1,000,000.00; reasonable attorneys' fees under Texas Civil Practice and Remedies Code § 38.001 for both the trial of this cause and any and all appeals as may be necessary; any taxable court costs, including but not limited to any expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

**SCHULMAN, LOPEZ,
HOFFER & ADELSTEIN, LLP**

*/s/  Ricardo R. Lopez*
**Ricardo R. Lopez**
State Bar No. 24013059
Email:  rlopez@slh-law.com
**John J. Joyce**
State Bar No. 24049462
Email:  jjoyce@slh-law.com
845 Proton Road
San Antonio, Texas 78258
Telephone:     210-538-5385
Facsimile:     210-538-5384

**ATTORNEYS FOR PLAINTIFFS**